# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OF MARYLAND

| | |
|---|---|
| **TAMMIE FRALEY, Individually, and as ADMINISTRATRIX OF THE ESTATE OF JESSICA HAYNES, and as PERSONAL REPRESENTATIVE OF H.H., a MINOR,**<br>279 Crestview Drive<br>Martinsburg, WV 25405<br><br>          Plaintiffs,<br><br>**TO THE USE OF CHARLES FRANKLIN HAYNES**<br><br>          Use-Plaintiff<br><br>**TO THE USE OF CHRISTOPHER WILLIAM LARUE**<br>11890 Blairs Valley Road<br>Mercersburg, PA 17236<br><br>          Use-Plaintiff<br><br>*v.*<br><br>**MERITUS MEDICAL CENTER, INC.**<br>11116 Medical Campus Road<br>Hagerstown, MD 21742<br><br>    Serve:<br>    Joseph P. Ross<br>    11116 Medical Campus Road<br>    Hagerstown, MD 21742<br><br>~and~<br><br>**DIAGNOSTIC IMAGING SERVICES, LLC**<br>11110 Medical Campus Road<br>Hagerstown, MD 21742<br><br>    Serve:<br>    Joseph P. Ross<br>    11116 Medical Campus Road<br>    Hagerstown, MD 21742 | Civil Action No. |

~and~

**ASSOCIATED RADIOLOGISTS, P.A.**
251 Antietam Street
Hagerstown, MD 21740

    Serve:
    Robert A. Snyder, Jr.
    11th Floor
    100 Light Street
    Baltimore, MD 21202

~and~

**Brad Young, PA-C**
Meritus Medical Center
11116 Medical Campus Road
Hagerstown, MD 21742;

~and~

**Judith Njomo, M.D.**
Meritus Medical Center
11116 Medical Campus Road
Hagerstown, MD 21742;

~and~

**Dawit Wubie, M.D.**
Meritus Medical Center
11116 Medical Campus Road
Hagerstown, MD 21742;

~and~

**Chintu Sharma, M.D**
Adfintas Health
7250 Parkway Drive
Suite 500
Hanover, MD 21076

~and~

**Sherry Baldassari, N.P.**
Meritus Medical Center
11110 Medical Center Road

Suite 143
Hagerstown, MD 21742

~and~

**Mohammed Bilgrami, M.D**
Meritus Medical Center
11110 Medical Center Road
Suite 143
Hagerstown, MD 21742

~and~

**SAMINA ANWAR, M.D.**
Neurology Consultant, PA 235 Mill St.
Suite 1
Hagerstown, MD 21740

~and~

**MDICS AT MERITUS MEDICAL CENTER, LLC d/b/a ADFINITAS HEALTH AT MERITUS MEDICAL CENTER, LLC**
7250 Parkway Drive
Hanover, MD 21076

    Serve:
    Barry F Rosen
    Gordon Feinblatt LLC
    233 East Redwood Street
    Baltimore, MD 21202

~and~

**ADFINITAS HEALTH AT MERITUS MEDICAL CENTER, LLC**
11116 Medical Campus Road
Hagerstown, MD 21742

    Serve:
    MDICS At Meritus Medical Center, LLC
    7500 Parkway Drive Ste 500
    Hanover, MD 21076

        Defendants.

# COMPLAINT

1. Plaintiff TAMMIE FRALEY, Individually, as ADMINISTRATRIX OF THE ESTATE OF JESSICA HAYNES, and as PERSONAL REPRESENTATIVE OF H.H., a MINOR, by and through their attorneys, Barry J. Nace, Esquire, Matthew A. Nace, Esquire, and PAULSON & NACE, PLLC, hereby bring this claim against Meritus Medical Center, Diagnostic Imaging Services; Associated Radiologists, P.A., Brad Young, PA-C; Judith Njomo, M.D.; Dawit Wubi, M.D.; Chintu Sharma, M.D.; Sherry Baldassari, N.P.; Mohammed Bilgrami, M.D.; Samina Anwar, M.D., MDICS at Meritus Medical Center, LLC; and Adfinitas Health at Meritus Medical Center, LLC and for their claim state:

## JURISDICTION

2. This claim exceeds the required jurisdictional amount of $75,000.00 and is filed pursuant to Md. Code Ann., Courts and Judicial Proceedings § 3-2A-01 *et seq.*

3. This Court has personal jurisdiction over each named Health Care Provider pursuant to Md. Code, Courts and Judicial Proceedings §§ 6-102 and 6-103.

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that Plaintiffs are citizens of the State of New Jersey, and Defendants are incorporated in and/or citizens of the States of North Carolina, Georgia, and Maryland, and the amount in controversy exceeds the jurisdictional amount of $75,000.00.

5. This Court has personal jurisdiction over Defendants pursuant to Md. Code, Courts and Judicial Proceedings § 6-103, and because Defendants have the requisite minimum contacts with the State of Maryland.

6. Venue lies in the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1402 since the occurrence which gave rise to the cause of action arose in the State of Maryland.

7. This Court has jurisdiction over this matter now that Plaintiffs have complied with the provisions of Md. Code Ann., Courts and Judicial Proceedings §3-2A-01 *et seq.* and arbitration has been waived.

**PARTIES**

8. Plaintiff Tammie Fraley, Individually, as Administratrix of the Estate of Jessica Haynes, and as personal representative of H.H., a MINOR is an adult resident of the State of West Virginia.

9. Plaintiff Tammie Fraley was, at all times relevant to this action, the mother of Jessica Haynes.

10. Plaintiff H.H. was, at all times relevant to this action, the daughter of Jessica Haynes.

11. Jessica Haynes was at all times relevant to this action an adult resident of the State of West Virginia.

12. Plaintiff H.H. is and, at all times relevant to this action, was a minor residing in the State of West Virginia.

13. The Estate of Jessica Haynes was and is open in the State of West Virginia.

14. Plaintiff Tammie Fraley is the administratrix of the Estate of Jessica Haynes.

15. Plaintiff Tammie Fraley has legal custody of H.H.

16. Plaintiff Tammie Fraley is the biological grandmother of H.H. and was the biological mother of Jessica Haynes.

17. At all times relevant hereto, Defendant Meritus Medical Center was a corporation organized under the laws of the State of Maryland and conducting the business of providing health care services in Washington County, Maryland.

18. At all times relevant hereto, Defendant Diagnostic Imaging Services was a corporation organized under the laws of the State of Maryland and conducting the business of providing health care services in Washington County, Maryland.

19. At all times relevant hereto, Defendant Associated Radiologists, P.A. was a corporation organized under the laws of the State of Maryland and conducting the business of providing health care services in Washington County, Maryland.

20. At all times relevant hereto, Gregory S. Zimmerman, M.D was a healthcare provider operating under the laws of the State of Maryland and conducting the business of providing health care services in Washington County, Maryland.

21. At all times relevant hereto, Jennifer K. Flaim, D.O. was a healthcare provider operating under the laws of the State of Maryland and conducting the business of providing health care services in Washington County, Maryland.

22. At all times relevant hereto, Narasim Murthy, M.D. was a healthcare provider operating under the laws of the State of Maryland and conducting the business of providing health care services in Washington County, Maryland.

23. At all times relevant hereto, Paul C. Marinelli, M.D. was a healthcare provider operating under the laws of the State of Maryland and conducting the business of providing health care services in Washington County, Maryland.

24. At all times relevant hereto, Drs. Zimmerman, Flaim, Murthy, and Marinelli were agents, servants, and/or employees of Defendants Diagnostic Imaging Services and Defendant Associated Radiologists, P.A. and doing business within the scope of their employment.

25. At all times relevant hereto, Defendant Brad Young, PA-C was a healthcare provider operating under the laws of the State of Maryland and conducting the business of providing health care services in Washington County, Maryland.

26. At all times relevant hereto, Defendant Judith Njomo, M.D. was a corporation healthcare provider operating the laws of the State of Maryland and conducting the business of providing health care services in Washington County, Maryland.

6

27. At all times relevant hereto, Defendant Dawit Wubie, M.D. was a healthcare provider operating under the laws of the State of Maryland and conducting the business of providing health care services in Washington County, Maryland.

28. At all times relevant hereto, Defendant Chintu Sharma, M.D was a healthcare provider operating under the laws of the State of Maryland and conducting the business of providing health care services in Washington County, Maryland.

29. At all times relevant hereto, Defendant Sherry Baldassari, N.P. was a healthcare provider operating under the laws of the State of Maryland and conducting the business of providing health care services in Washington County, Maryland.

30. At all times relevant hereto, Defendant Mohammed Bilgrami, M.D was a healthcare provider operating under the laws of the State of Maryland and conducting the business of providing health care services in Washington County, Maryland.

31. At all times relevant hereto, Defendant Samina Anwar, M.D. was a healthcare provider operating under the laws of the State of Maryland and conducting the business of providing health care services in Washington County, Maryland.

32. At all times relevant hereto, Health Care Provider MDICS at Meritus Medical Center. LLC d/b/a Adfinitias Health at Meritus Medical Center, LLC was a corporation organized under the laws of the State of Maryland and conducting the business of providing health care services in Washington County, Maryland.

33. At all times relevant hereto, Health Care Provider Adfinitias Health at Meritus Medical Center, LLC was a corporation organized under the laws of the State of Maryland and conducting the business of providing health care services in Washington County, Maryland.

34. Upon information and belief, the hospitalists who treated the decedent were the agents, servants, and/or employees of MDICS at Meritus Medical Center LLC d/b/a Adfinitas Health at Meritus Medical Center, LLC and Adfinitas Medical Center, LLC.

35. Upon information and belief Defendant Diagnostic Imaging Services; Defendant Associated Radiologists, P.A.; Gregory S. Zimmerman, M.D.; Jennifer K. Flaim, D.O.; Narasim Murthy, M.D.; Paul C. Marinelli, M.D.; Defendant Brad Young, PA-C; Defendant Judith Njomo, M.D.; Defendant Dawit Wubie, M.D.; Defendant Chintu Sharma, M.D; Defendant Sherry Baldassari, N.P.; Defendant Mohammed Bilgrami, M.D; and Defendant Samina Anwar, M.D. were acting as agents, servants, and/or employees of Healthcare Provider Meritus Medical Center.

36. Upon information and belief Gregory S. Zimmerman, M.D.; Jennifer K. Flaim, D.O.; Narasim Murthy, M.D.; and Paul C. Marinelli, M.D. were acting as agents, servants, and/or employees of Healthcare Provider Diagnostic Imaging Services.

37. Upon information and belief Gregory S. Zimmerman, M.D.; Jennifer K. Flaim, D.O.; Narasim Murthy, M.D.; and Paul C. Marinelli, M.D. were acting as agents, servants, and/or employees of Healthcare Provider Associated Radiologists, P.A.

## BACKGROUND

38. Each of the preceding paragraphs is incorporated by reference herein.

39. On June 2, 2016, Jessica Haynes presented to Berkeley Medical Center in Martinsburg, West Virginia with complaints of a headache that had been lasting for two days. After a CT Scan came back normal, she went home with instructions to return if the symptoms persisted.

40. On June 3, 2016, after working her shift, she went home and laid on the couch.

41. On June 3, 2016, Joseph Fraley, her step-father, came home and found her to be having difficulty standing, weakness, and continued complaints of a headache.

42. Mr. Fraley then took her back to Berkeley Medical Center.

43. The medical records of Berkeley Medical Center document that she arrived at approximately 3:38 PM and desired to have her symptoms re-evaluated.

44. After awaiting care for approximately two hours in the E.R. without being treated, Mr. Fraley drove Ms. Haynes to Meritus Medical Center in Hagerstown, M.D.

45. The medical records document that at 6:02 PM Ms. Haynes presented to the Emergency Department at Meritus Medical Center with a documented chief complaint of "Neuro Complaint."

46. While in the Emergency Department, a CBC lab study indicated an elevated white blood cell count of 13.8 and Meagan Cooper, D.O. ordered a spinal tap to be conducted.

47. At 10:21 PM, the spinal tap results documented a red blood cell count of 30 with a reference range of 0-1, a white blood cell count of 725 with a reference range of 0 – 5, polynuclear white blood cells of 65 with a reference range of 0 – 3, and a CSF protein reading of 101 with a reference range of 15 – 45.

48. At this point in time, the standard of care required all treating healthcare providers to have placed a brain abscess on his/her/its differential diagnosis and to have begun to work it up and treat it.

49. Dr. Cooper then requested that Ms. Haynes be admitted to the hospitalist services with a clinical impression of "1. CVA, concern for; 2. Viral meningitis, concern for."

50. Ms. Haynes was admitted to the hospitalist services under the immediate care of Brad Young, PA-C who is "dictating under the medical supervision of Dr. Njomo."

51. Mr. Young's initial assessment was documented as "1. Rule out cerebrovascular accident; 2. Possible viral meningitis; 3. Opiate addiction."

52. At 12:13 AM on June 4, 2016, Dr. Zimmerman interpreted a CT head and neck with and without contrast to be normal with no evidence of intracranial hemorrhage.

53. Ms. Haynes was started on IV ceftriaxone sodium 2 GM at 3:00AM on June 4, 2016.

54. At 1:32 PM on June 4, 2016, Dr. Marinelli interpreted an MRI of the brain with and without Gadolinium and documented "an acute ischemic infarction in the left brainstem as described above. There may be some petechial hemorrhage present due to susceptibility artifact. The possibility of an underlying vascular malformation cannot be excluded and a follow-up exam in 3-4 weeks may be helpful."

55. On June 4, 2016, Dr. Anwar was consulted by the hospitalists team as a neurologist and began treating Ms. Haynes in conjunction with the hospitalists team.

56. At 1:33 PM on June 4, 2016, Dr. Marinelli interpreted an MRI of the brain as having "subtle findings related to the patient's left-sided brainstem infarct as noted on the previous MRI of earlier the same day…"

57. At 9:44 PM on June 4, 2016, Dr. Bilgrami dictated an infectious disease consultation note in which he documented that Ms. Haynes had a left-sided brain ischemia causing right-sided hemiparesis and that her spinal tap was "consistent with aseptic meningitis-like picture," he ruled out bacterial meningitis; and he recommended that she needed an echocardiogram.

58. On June 6, 2016 at 9:43 AM, Ms. Haynes was taken off ceftriaxone sodium Chloride.

59. On June 6, 2016 at 9:51 AM, Ms. Haynes underwent an echocardiogram that demonstrated "evidence of right to left shunt via bubble study."

60. On June 6, 2016 at 11:46 AM, Ms. Haynes was noted to be irritable and "at times appear[s] incoherent."

61. On June 6, 2016 at 8:18 PM, Dr. Flaim interpreted an MR/MR-Brain/Stem W/WO contrast to indicate "[i]ncreased area of restricted diffusion in the left brainstem with surrounding edema and mild thin rim enhancement, most suggestive of an evolving infarct with increasing edema. …"

62. At this point in time, the standard of care required that a brain abscess should have been diagnosed by all named healthcare providers.

63. At no point in time did Dr. Flaim indicate an impression of the development of a brain abscess.

64. At no point in time during the remainder of her admission to Meritus Medical Center did any healthcare provider diagnose Ms. Haynes with/for a brain abscess.

65. At no point in time during the remainder of her admission to Meritus Medical Center did any healthcare provider document a consideration of a brain abscess being on the differential diagnosis.

66. At no point in time during the remainder of her admission to Meritus Medical Center did any healthcare provider treat Ms. Haynes for a brain abscess.

67. Ms. Haynes remained admitted to the hospitalist team and under the care of Drs. Anwar and Balgrami as her neurologists and infectious disease doctor until her ultimate discharge on June 16, 2016.

68. On June 16, 2016, Ms. Haynes was transferred to War Memorial Hospital in West Virginia for rehabilitation for what was documented as an "acute ischemic infarction in the left brain stem."

69. Ms. Haynes' initial CBC testing at War Memorial Hospital identified an elevated white blood cell count of 18.5.

70. On June 19, 2016, after vomiting and complaining of pain, a CT Head W and W/O contrast was conducted and led to an impression of "most likely represents a glioma of the brainstem or less likely abscess."

71. Once the CT Report was dictated, Dr. Hashem arranged for transfer of the patient to West Virginia University Hospital – Ruby Memorial.

72. Upon presentation to Ruby, the Emergency Department formulated an opinion of a brain tumor, and she was immediately admitted "with likely brainstem abscess [] [n]eeds biopsy/drainage if possible."

73. On June 20, 2016, Ms. Haynes was taken to the OR for aspiration and underwent a craniotomy for biopsy brain with brain lab.

74. Cultures grew streptococcus intermedius viridans.

75. Ms. Haynes then underwent a prolonged and complicated stay at Ruby for numerous reasons including monitoring her intracranial pressure and having to undergo a tracheostomy and PEG.

76. Ms. Haynes spent the remainder of her life in various nursing homes and traveling to Ruby Memorial for further follow up.

77. Ms. Haynes was ultimately discharged from Ruby on July 16, 2016.

78. Ms. Haynes ultimately passed away on March 17, 2017 as a result of the negligence of the named healthcare providers.

79. As a result of the passing of Ms. Haynes, H.H. no longer has a mother.

80. As a result of the passing of Ms. Haynes, Tammie Fraley no longer has a daughter.

81. As a result of the negligent conduct of the named Defendants, Plaintiff incurred over $750,000 in medical bills.

82. As a result of the negligent conduct of the named Defendants, Plaintiff was incapable of completing her nursing degree that she was taking classes to pursue.

83. As a result of the negligent conduct of the named Defendants, Plaintiff lost wages from her employer from the time of her admission until the time of death.

84. As a result of the negligent conduct of the named Defendants, Plaintiff H.H. was deprived of economic benefits from her mother.

85. As a result of the negligent conduct of the named Defendants, Plaintiff Tammie Fraley was deprived of economic benefits that Ms. Haynes was contributing to the household.

86. As a result of the negligent conduct of the named Defendants Plaintiffs Tammie Fraley and H.H. have suffered pecuniary loss, mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, parental care, attention, advice, counsel, training, guidance, education, and economic damages.

87. As a result of the negligent conduct of the named Defendants, Decedent suffered pecuniary loss, mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, parental care, attention, advice, counsel, training, guidance, education, and additional medical bills and further economic damages

## Count I
**(Medical Negligence – Wrongful Death)**

88. Each of the preceding paragraphs is incorporated by reference herein.

89. Plaintiffs Tammie Fraley and H.H. each bring a claim for the wrongful death of Jessica Haynes (hereinafter "Decedent") pursuant to Md. Code Ann., Cts. & Jud. Proc. § 3-904.

90. All Defendants and their agents, servants and employees owed a duty to the Decedent to exercise the degree of skill, care, judgment and expertise ordinarily possessed and used by health care providers acting in the same or similar circumstances.

91. Plaintiffs and Decedent relied upon all Defendants and their agents, servants and employees to exercise such skill and care to properly, accurately, and timely diagnose, treat and manage her medical condition as other reasonable health care providers if presented with the same or similar circumstances.

92. All Defendants and their agents, servants and employees either did not possess the degree of skill, care, judgment and expertise required of them, or did not use the degree of skill, care, judgment and expertise required of them in treating and managing Decedent's condition.

93. All Defendants and their agents, servants and employees thereby breached their duties of care owed to Decedent, including, but not limited to, the following duties:

   a. to have properly and timely formulated a differential diagnosis;

   b. to have properly and timely diagnosed a brain abscess;

   c. to properly treat a brain abscess;

   d. to properly transfer Decedent to a facility capable of treating her;

  e. to effectively communicate between one another;

  f. and being otherwise negligent.

94. Plaintiffs also assert the doctrines of *res ipsa loquitur* and *respondeat superior*.

95. As a proximate and direct result of the medical negligence of all Defendants and their agents, servants, and employees, Ms. Haynes died and Plaintiffs have suffered, and will continue to suffer into the future, economic damages, mental anguish, emotional pain and suffering, physical pain and suffering, loss of society, companionship, and comfort.

**Count II**
**Medical Negligence – Survival**

96. Each of the preceding paragraphs is incorporated by reference herein.

97. Plaintiff Tammy Fraley, as personal representative of the estate of Jessica Haynes, brings this cause of action pursuant to Md. Code Ann., Estates and Trusts § 7-401.

98. All Defendants and their agents, servants and employees owed a duty to the Decedent to exercise the degree of skill, care, judgment and expertise ordinarily possessed and used by health care providers acting in the same or similar circumstances.

99. Decedent relied upon all Defendants and their agents, servants and employees to exercise such skill and care to properly, accurately, and timely diagnose, treat and manage her medical condition as other reasonable health care providers if presented with the same or similar circumstances.

100. All Defendants and their agents, servants and employees either did not possess the degree of skill, care, judgment and expertise required of them, or did not use the degree of skill, care, judgment and expertise required of them in treating and managing Decedent's condition.

101. All Defendants and their agents, servants, and employees thereby breached their duties of care owed to Decedent, including, but not limited to, the following duties:

  a. to have properly and timely formulated a differential diagnosis;

  b. to have properly and timely diagnosed a brain abscess;

    c. to properly treat a brain abscess;

    d. to properly transfer Decedent to a facility capable of treating her;

    e. to effectively communicate between one another;

    f. and being otherwise negligent.

102. Plaintiff also asserts the doctrines of *res ipsa loquitur* and *respondeat superior*.

103. As a proximate and direct result of the medical negligence of all Defendants and their agents, servants, and employees, Ms. Haynes suffered injury during the remainder of her life after the negligence and until her death, as a result of which, Tammie Fraley as personal representative of the estate of Jessica Haynes seeks all damages, economic and non-economic as allowed by law.

    **WHEREFORE** for the cause of actions stated, Plaintiffs seek all damages allowed by law and pray an award be entered against each of the individual Health Care Providers and in their favor in excess of the required jurisdictional amount of $75,000.00.

***Plaintiffs Demand Trial By Jury***

Dated: April 20, 2020

    Respectfully submitted,

    PAULSON & NACE, PLLC

    <u>/s/ Matthew A. Nace</u>
    Matthew A. Nace, Esq.
    CFI# 0812170318
    Barry J. Nace
    1025 Thomas Jefferson St., NW
    Suite 810
    Washington, DC 20007
    202-463-1999 – Telephone
    202-223-6824 – Facsimile
    man@paulsonandnace.com
    *Counsel for Plaintiffs*

# **CERTIFICATE OF GOOD STANDING**

In accordance with Maryland Rule 1-313, I hereby certify that I am a member in good standing of the Maryland Bar and licensed to practice law in the State of Maryland with an office address in the District of Columbia.

/s Matthew A. Nace
Matthew A. Nace

In accordance with Maryland Rule 1-313, I hereby certify that I am a member in good standing of the Maryland Bar and licensed to practice law in the State of Maryland with an office address in the District of Columbia.

/s/ Barry J. Nace
Barry J. Nace
